O United, O United, O United. All persons having business before the Honorable United States Court of Appeals for the District of Columbia Circuit are admonished to draw near and give their attention to the court in doubt state. Donate to the United States through this Honorable Court. PCA, please. Case number 12-3042 et al., United States of America v. Haji Bagcho, also known as Haji Bagchagul, also known as Haji Bagchagul Appellant. Ms. Rowland for the appellant, Mr. Parker for the appellate. Good morning. Good morning. May it please the court, Sandra Rowland on behalf of Haji Bagcho. Turning first to the Jury Selection and Service Act issue, the district court didn't just deny a continuance. It foreclosed any further inspections, inspection of the jury records on the merits. The court discussed the law and the defendant's burden, his legal burden in a fair cross-section challenge at length, and then ruled that the defendant hadn't met his burden of showing a fair cross-section violation, and so further inspection of the records was not justified. Any attorney, every attorney, would think that a ruling that the defendant hadn't met his burden of showing a violation and so further discovery was not justified meant that no one representing the defendant could seek further discovery. No attorney would think, as the government suggests, that a lawyer could simply send a different attorney to the jury office to get the discovery where the court had discussed the merits of the case, the merits of the issue, had ruled that he hadn't shown a fair cross-section violation, and discovery wasn't justified. Why couldn't you have just clarified? Why wouldn't the obvious thing to do here for an attorney be to clarify with the court and say, look, I filed a motion for a continuance? Is that what you're ruling on? Access to these jury's records isn't a form of discovery, or do you mean to be ruling on this issue for which there is no motion before you? I'm going to try to answer the court's question, but I'm actually finding it really hard to hear you. That's mutual, actually. I can't hear you either very well. Oh, you can't hear me? Not well at all. Let me try. Is this better? That's better. Thank you. Can you hear too, Doug? Yes, thank you. You can hear me? Yes. My question is, why wouldn't the obvious thing for an attorney to do in that situation be to ask the district court for clarification? Because there seemed to be a lot of confusion. There is a motion for continuance only before the court, and then suddenly there's this discussion of merits on which there is no motion before you, and to assert a right for which discovery is not needed. Why wouldn't that be the proper course in this case? The defense attorney was asking to learn more because there were several issues about which the witness could not testify. She didn't have the information, but she said it could be found in the jury office. After the court went through an entire analysis of fair cross-section claims and determined that this defendant hadn't made out a claim, and therefore there was no point in going to the jury office, there wasn't any confusion. There's only confusion on appeal, really. At the moment, there was no confusion. The judge said, you made a fair cross-section violation claim. I deny it for the following reasons. You haven't met your burden, and therefore there's no inspection. I don't think there's any importance, any significance to the word discovery. I don't think anyone was thinking of it as discovery as we think with Rule 16. It was just she wanted to learn more. She told the judge exactly what she wanted to learn, why she wanted to go to the jury office to learn that. She called it—I don't actually know if she called it discovery. The court called it discovery, but it meant inspect the jury records. The defendant moved for a continuance, and the continuance was denied. That's what we have in front of us. Now, I don't see you're making an argument that the denial of the continuance was on an arbitrary or erroneous ground. What you're arguing is that, as I understand it, that you had an absolute right to inspect the jury records, and you did indeed have such a right, and you had the right after the continuance was denied. The defense counsel used the word continuance. That's what was at issue, trying to get this trial going. The judge said, well, I'll give you a day. We'll get Ms. Larry in here right away. It was all about timing. The defense counsel just didn't say, I want a continuance. The defense counsel said, I want to inspect the records further. I need more information than the jury. What the counsel needed was a continuance. She didn't need anything in order to get that information, or just go ahead while the trial's in progress, right? If not for this ruling, the defendant's representatives could have gone to the jury office to get that information, although I didn't. The ruling didn't stop you from doing that? You need a court order for that. Pardon me? The ruling didn't prohibit you from going to the jury records? I think it absolutely did, and it still does. We have a court order saying you need to show a fair cross-section violation, and you didn't do it. You need to show that, she said, if you want a continuance, which you're not getting. But whatever that court order says, if you went to the jury office, you would see the records you wanted, wouldn't you? Well, actually, it's my understanding you wouldn't without a court order. You can't just walk in and see them. You have to have a court order to do that. And this judge had already said no. I think that's correct. How do we know that? How do we know what? That you need a court order. One of the questions I had in my mind was, while there's an absolute right, what does that mean? In other words, if the defendant walks into the jury office today, does he get to see the records? There's nothing in the record. Let's assume that the district court had not ruled. Is there any rule or regulation that says that the defendant must have a court order in order to look at the jury records? There is no rule that I'm aware of or regulation. There's nothing in the record about what would happen. I can tell you from my own experience. I mean, there's a sign on the door that says no attorneys allowed. And when you go in and say, I'd like to ask some questions about the Jury Selection and Service Act, you would be told, as I was. But you're an attorney. You're not the defendant. The question is, what would happen if the defendant went in to look? If the defendant was not incarcerated and went in and asked, I don't know the answer to that. There's nothing in the record. So far as you know, an attorney could not simply walk in and inspect? No. I think an attorney can make an appointment with the jury administrator. It's my understanding that to actually inspect the jury records, you need a court order. But there's nothing in the record about that. And I'm not 100% positive about that. Let me just ask. Counsel was appointed to represent the defendant. Was he sole counsel? No. It was co-counsel. There was co-counsel. Yes. So the district court made a definitive record of her ruling, saying there would be no more discovery. Did that mean, in your view, that the defendant couldn't go to the jury office or the attorney could not make an appointment? Yes. That meant that now. And that then, and it means it now, there was a court order saying the defendant needed to show a fair cross-section violation. He didn't meet that legal burden. And therefore, it's a different issue. Well, that's a different issue. I agree. The statute is not as clear as it might be, because it almost assumes that you have to have the information in order to file a motion. So here, the defense was trying to get the information. And if the trial proceeded, counsel couldn't be in two places at once. And arguably, the only option he had at that point was to seek a continuance rather than waste everybody's time by going to trial and then a problem arising with the jury. But the district court did allow the jury supervisor to testify. She did. And the attorney pointed out, very specifically, things that the jury administrator was not able to testify about because she didn't have those records before her. So from your reading of the cases, principally the appellate cases, how has this proceeded under this statute? In other words, a defendant is before the trial judge and making an objection and then everything stops while the defendant or maybe his attorney goes to the jury office to look at the records? That is one way it could proceed in a situation like this where the defense attorneys were from the Federal Public Defender Office, an institution. They could perhaps get another attorney to go look at the jury records. It's a problem in the statute. Obviously, you can't proceed without getting any information. You can't even make your objection until the jury panel walks in. You can't see any information until the jury walks in. And then, of course, courts, to address your point, don't want to continue. But I was wondering whether your research in the cases had indicated what had happened in fact. In other words, the trial can't proceed. When I've been reading the cases, I've been looking for something else, and I just wondered whether your research had made it clear that the statute contemplates that the trial stops because you're not going to know who's been selected for the jury until the first day of trial starts. I think that the statute contemplates the trial stopping so that you can do the analysis. Well, the trial hadn't started. Voidir had begun, but no jury was impaneled. So I think the statute contemplates not impaneling a jury until the jury records have been inspected. Just one other question. If your counsel representing a defendant and a trial is set for December 1, do you have access to the list of the jurors who will be called that day, and when do you get that? The court discussed that issue in United States v. DeFreeze, and in our jurisdiction and with our jury plan, the defendant doesn't have access to those records until the potential jurors, the veneer men, come into the courtroom. So there's no space built in there. I know from having been called as a juror myself that the defense counsel is standing there with a list of all the jurors who are sitting in the room who are potentially to be the jurors sitting on the defendant's side. They don't get that list until that first day of trial when the potential jurors are waiting in the wings. Do you know if that same practice is followed in other jurisdictions, or is that just what our courts do? Does the statutory scheme work better in other jurisdictions? I don't know. That part is not in the statute. It's in the district court's jury plan for our district court. So I don't know how it works in other jurisdictions. Ms. Rowland, am I correct in thinking that the defendant was represented in the district court by your office, the Federal Public Defender Office, by two lawyers there? Yes. So the rest of your staff, somebody on your staff could have gone to, if you had the whatever you need to get in, could have gone to the jury records office, right? I work for an institution, yes. We have other lawyers who could potentially do that. In this case, there was an order preventing us from doing that. And certainly in other cases, you know, with the CJA panel, they wouldn't have that resource to send someone else. Did you say the order was preventing it, or you just didn't have the order that you needed to allow it? Both. We do not interpret this as simply an order for denying a continuance, but an order saying you haven't met your burden, and therefore you cannot proceed. There will be no further inspection of the jury records because you haven't made your burden, which is exactly what the district court said in Williamson, which this court recently decided. The analysis that the district court applied in Williamson and the analysis here are almost exactly the same. They track each other exactly. Ordinarily, when you move for a continuance, quite apart from this situation, you have to make some showing, do you not? Certainly, if you move for a continuance, you need to make a showing of why you can't proceed. Some sort of good cause or what have you. Pardon me? Some good cause or something of that nature. Yes. Yes, and here the cause was we weren't able to get all of the . . . haven't been able to get all of the inspected records as we need to, and so we need to inspect the record, be able to go to the jury office and get the information that the administrator wasn't able to provide. I'd also note that there was . . . The government's representation at oral argument before the district court, that it would take months or years to sort through the information you wanted to see. Do you agree with that time assessment? I have never done this, so I don't know. The things that counsel asked to see were very specific. They were . . . She wanted to see the records of the 147 people who asked to be excused. The administrator also couldn't say what quadrant the undeliverables and unresponsives lived in. She couldn't say what quadrant the 362 people who didn't respond to the summons lived in. She didn't know the race of the people who were excused. She didn't know the race of the 485 people who returned the summons, and she didn't know the race of the 12 jurors who had been sent home. The administrator testified that all of that was available in the jury office, and I don't think it would have taken months or even weeks, or even more than a day or two, to find that information. What's your understanding then? Suppose defense counsel had that information. Then defense counsel could do what the Act allows for, could analyze that information, and if she thought that it showed a fair cross-section violation, then file that motion. But she never got to that point. As to this client's jury, or more broadly, don't you have to show a systemic problem? Yes. She would have to show that this wasn't just a fluke,  Paulette's question goes to the question of, I'm implying something she didn't say, but that it's not simply getting the race and where people live as to your client's jury pool, but it's investigating whether there's a systemic problem. That would take time. It was counsel's view that by looking at that information, we could make inferences about systemic violations. But what I'm getting at is the judge heard testimony from the jury supervisor as to what their procedure was. And suppose it turned out that everybody was from Northwest, but that everyone from Northeast had a valid excuse. Then where do you end up? Well, if the excuses were valid, then that's not a fair cross-section violation. But if you found out that all 1,100 of the 1,200 summonses were sent to people in Northwest, you could infer that there's a problem with the computer program. You can infer that there's a problem in the implementation of the act. Oh, I understand there are a couple of cases where there was a computer glitch. All right. But that's not what these questions that you were indicating counsel had were focusing on. No, but if she had discovered perhaps that all of the 12 jurors who had sent home had been African American or that very few summonses were sent to any quadrant other than Northwest, even without hiring an expert to come look at the computer code, she could make inferences about a fair cross-section violation. And frankly, I think if that had been the case, the Court would want her to then go hire a computer expert to find out, you know, why summonses aren't sent to other quadrants. So counsel is asking for a continuance of potentially weeks. No. No, she was asking for a continuance to find out the answers to those questions. And depending on the answers to those questions, she could have potentially we don't know what the answers would have been, but she could have potentially been able to make inferences about a fair cross-section violation. All right. We've gone way over. Well, I just had one other question, and that was you asked for a remand. Do we know if these records still exist, or would that even be part of the remand? There's nothing in the record about that, but I know that most of the records that I would be interested in on a remand do still exist. Okay. And just to understand the theory again, is the defense counsel would go and would take a day or two to answer these questions that she had, and either the answer would be there's no there there, and the trial would go forward, or there would be something there that would look like the type of problem that could well be a recurring problem, and then the court would address it at that stage. Yes. Okay. Yes. And, you know, as I've said repeatedly, we don't think this was simply a ruling on a motion for a continuance. All right. But what else is there? All right. So I assume you are preserving your other two issues as well? Yes. All right. Why don't we hear from the government? Thank you. Tell us how you think this statute works. Thank you. Good morning. May it please the Court. Good morning. There's no question that the defendant sought a continuance, and the statute makes very clear that in order to obtain a stay of the proceedings, a defendant has to show an actual substantial violation of the act. The reason for that is because Congress recognized that these sorts of claims by their nature would arise at the very outset of a trial when voir dire is underway, and it would not make much sense. This isn't making any sense to me. They don't have the information needed to even identify whether they have an issue under this statute, let alone to look at the records, to research a motion, if they think they need something. They don't even have it until the moment the trial begins. And so to say at that very moment, that first day, they have to just by looking across the room at the jury, also have a substantial basis for thinking a violation is to empty the statute of any operation. How are they supposed to have that substantial basis the first day? They don't. That's the point. Are they supposed to have it? They looked and they saw an unusual disproportionality in the jury pool. Right. They can't immediately decide why or how that was going to happen. They got the juror person from the office to come in and testify, but she left as many unanswered questions as the answered ones. So what were they supposed to do? Imagine hypothetically that there was actually some real computer problem. This was one of those computer glitch or programming problem situations. Imagine that's what happened here. How would the process have worked? Well, the statute specifically addresses this in Section 1867, and what it says is that defendants have an absolute and unqualified right to see the records in order to determine whether they can make this motion. But what they can't do is delay their proceedings. At least they don't have an entitlement to delay their proceedings while they are doing that. And that is because if the rule were otherwise, every defendant, even if there was no indication of a problem with the jury, would have a ready-made continuance that they could invoke simply by saying, I'd like to go and see the records. So how is this? Well, first of all, they're going to have to have something by looking at the jury pool, right? In order to actually eventually demonstrate a problem, yes. But there is no requirement in the statute. Oh, what is your understanding? In other words, the defendant would say to the district court judge, I would like a continuance to go look at the records. The judge says, denied. The trial proceeds. Two weeks into the trial, defense counsel comes back, files a motion with the judge saying there's a problem with the jury pool? Well, the the Or is it simply an issue for appeal? No. The statute would give them seven days from the time that they discover the grounds to potentially make the motion. They would have those seven days in which to conduct their investigation. And if the trial was already underway, what the statute says is, at that point, they can file a motion. And if the judge finds that there has been a substantial violation of the Act, the So why wouldn't that seven-day period apply here? I mean, the trial has started in the sense that there is a judge who is ready to proceed to pick the jury. Correct. Yes. And it would. It would. The only — I think the only debate here is whether the district court had to stop the proceedings while the investigation was proceeding. But this is what I'm getting at. The statute says if the trial was ongoing and mid-trial, this issue is raised, you get seven days. No. So the seven days means the trial continues and counsel sends out an investigator to look at — to do the investigation? I think that's probably correct. But it doesn't have to be while the trial is proceeding. I know, but I'm trying to understand what this seven days was intended to do. I mean, my understanding here is this experienced trial judge understood that the defendant had raised an issue. So she didn't just proceed willy-nilly. She had the jury supervisor person testify as to how juries are chosen. Correct. And not hearing anything else, she said no further discovery. And so the problem we're having, as our questions to appellants counsel made clear, is if you have a right to this, is the statute, Congress contemplate this was a mid-trial matter? Yes. Well, it contemplates that these issues will arise often, as in this very case, as soon as the defendant sees the jury pool. But Judge Millett's whole point, as I understood it, was you can't make this motion and have a chance of succeeding unless you have the data. That's correct. That's correct. But necessarily you have to have an investigator who can do this while the trial is proceeding? Well, you have to be able to, if you want to conduct an investigation and you want to go to the jury office and see the records in an effort to determine whether there is in fact a substantial violation of the Act, the statute gives you an unqualified right to do that. That was the Supreme Court's ruling in test. But what it doesn't give you We're with you on that. Right. The question is the practicality of how this statute is supposed to work. Yes. How I think it is supposed to work is that the defendant will review the records, but that doesn't mean that he or she is relieved from the burden of having to also proceed with trial. These are two things that Congress envisioned would happen in tandem. And the reason that it envisioned they would happen in tandem is, were it otherwise, the result would be basically a continuance or the opportunity for a continuance in basically every case. And I think that that is why the district court here engaged in the discussion of whether there was a showing of any violation of the Act, because that's what the statute says in getting a state of the proceedings. Do you think that defense counsel, particularly public defenders and CJA attorneys, have the resources to be doing this type of research at the same time a trial is ongoing? Congress would have thought that there's public defenders sitting around twiddling their thumbs, ready to go do this research for their colleague during a trial, or that during trial they're supposed to be spending their time doing this? Well, I don't — I wouldn't presume to suggest what the — Because your theory presumes that they're supposed to do it while the trial goes on, doesn't it? Well, I think that that may be true. At the very least, while the jury is being selected. And that, I think, is simply an inescapable result of Congress's scheme. That doesn't mean — It's not inescapable. It's an inescapable result of your theory. What I'm trying to figure out is the problem with administrability here, the way the jury plan operates in our court, or do all courts have this same problem? Surely someone has figured out how to crack this nut and get this to work, the statute to work the way it's meant to, and not have defense attorneys trying to conduct a trial and examine records like this simultaneously. I honestly don't know, Judge Millett, how it is handled in other districts. I do know that in this district, I believe that Ms. Rowland is correct. The defense counsel would not see or prosecutor would not see the jury pool until the first day. But I'm just saying the jury office probably isn't open — is open probably about the same hours as the court. So I'm not even sure when this poor attorney who's in trial all day is supposed to go look at these records. Well, one thing that I want to make very clear is there is a difference between what a defendant is entitled to under the statute and what a district court might choose to permit. And here, for example, the district court did agree to a stay of the proceedings so that the jury commissioner could come in and testify. I understand, but that raised more questions than answers, right? And so the problem is how exactly was a defense attorney, as Judge Rogers said, supposed to be in two places at one time, in the courtroom during the day and in the voting office during the day? Well, it may be — there may be some harshness to this rule, but I think — Well, harshness, it can't work. No, I disagree with that, Judge Millett. Okay, tell me how it was supposed to work. I think that what would have happened here, if the defendant really believed that this was worth pursuing, would be that they would proceed with voir dire, but the co-counsel or an investigator or someone else could go to the jury office and see the records. That is the type of thing that happens every day. And have extra personnel available. Is it your experience that a public defender's office has extra people, is not overloaded? Well, I wouldn't — I would not presume to judge the resources of the — You could deal with them every day. But every day in trial courts, prosecutors and defense lawyers have to make judgments about what they are going to devote their resources to. And that is something that I think this statute contemplates. But that sounds like — so then that sounds like your answer is that they have to make a choice between devoting themselves to the defense of their client in the courtroom and exercising the right, this unqualified right that the statute gives them. And the answer is always going to be, we have to give up on that right to investigate the jury records because we've got to deal with the trial that's happening right in front of us. Well, I don't — Unless we have extra resources. I don't think that will always be the right result. But I also think that — Always? Well, how often do you think they'll be able to do these things simultaneously? I don't know. I think it would depend very much on the facts of each case and the circumstances of each defendant. Is this right supposed to depend on the amount of resources the defendant has? I'm sorry, I didn't — Right supposed to defend on the amount of resources the defendant has? Of course not. Of course not. And we would never suggest that. The only point here is whether there is an entitlement to stop the proceedings while this investigation takes place or whether a district court could determine, as the court did here, that a continuance was not warranted. Because it's not just — The problem here is the district court didn't say, I deny a continuance. It didn't. I know that was the motion that was asked for. But what the government counsel argued was a merits issue about the jury right to the court. And the court ruled exclusively on the merits of their showing as to a fair cross-section of the community and ruled on their inability to have discovery into those records and that they hadn't met their burden. If the district court had made a ruling in terms of a continuance decision, I would understand that point. But what happened here is you had a motion for a continuance and then suddenly the government's arguing a merits issue and the district court's ruling on a merits issue. So we never got to sort these things out about how the district court envisioned letting the trial go forward but them still exercising their rights. Well, I think there are two responses to that, Judge Millett. If I may, I'd just like to explain both of them. The first is the statute says that in order to obtain a stay of the proceedings you do have to show, at least to be entitled to one, you have to show a substantial violation of the Act. And so that is why there was all of this discussion about that and that is why the district court considered these issues. The other point is in determining near the end of the court's ruling, which again was an oral extemporaneous ruling on an oral motion, so it was not a written ruling, the court did say I cannot continue to provide discovery, there's been an insufficient showing for discovery. But we think that those references have to be understood in the context of the motion that was pending before the court. And that was very much a motion for a continuance. And so I think the only reasonable way to understand that is that the court was saying I'm not going to continue to provide you the kind of discovery that I just provided you, which was stopping the trial so that you can, in this case, provide the testimony of the jury commissioner. But it doesn't mean that, as my friend has suggested, that the defendant was precluded from attempting to exercise his unqualified right. And I don't think that we should lightly presume that a district court judge would reach out and override that right. The other point I – Oh, I'm sorry. Is this your second point? Go ahead. I don't want to interrupt. You wanted to make both points. Okay. So the statute says that a motion raising a question, a substantial question, the substantial question that you want the defendant to have has to be made within seven days of either vaude or starting, or when they could or reasonably could have discovered the violation, both of which are the same day. But under the statute it says whichever is earlier, not later. And so under the theory here that they're supposed to go investigate while the trial goes forward, that doesn't work either. Because if it takes them more than seven days from the start of vaude or to discover the violation, they can't raise it under the statute because the earlier deadline is when it starts the clock for the seven days. So they couldn't, if they had discovered, if they had gone on as the district court envisioned, and it took them eight days to discover the problem with the computer, they couldn't raise it under the statute, could they? As a statutory matter, no. I mean, the government obviously would have to invoke that time bar. We are not invoking it here. The point that I would simply note— I'm invoking it here because it doesn't apply here. Well, it would because there was some question about whether— We're trying to figure out how the statute works. Right. The statute envisions a front-loading, a very strict front-loading of this process, seven days, whichever is earlier. And here it appears that the vaude is when you first have a chance of knowing anything at all. So that's going to start the clock every single time. Well, I think that's correct as a usual matter, Judge Millett. I would just point this Court to the Court's prior decision in DeFries. In that case, it discussed the legislative history of the statute and explained that Congress wanted these sorts of issues to be resolved very quickly because they would be arising right at the beginning of trials. And it envisioned that there would be very strict time limits placed on defendants who wanted to raise these kinds of challenges. So I do think that that is inherent in the statutory scheme. I did want to just quickly respond to a couple of other points. Judge Rogers, you had asked whether these records could have been obtained later. And I think the question is yes. The statute provides that these records do become publicly available after the master jury wheel is refilled. It is refilled every four years. This trial occurred six years ago, so obviously there have been some period of time in which they've been publicly available, and I don't think there would be any impediment at all to seeing those records. And Judge Millett, you had also said that whether this investigation might take months or years. I just wanted to clarify something. What the government had said was that it appeared that an analysis of months or years' worth of data would be required, but we weren't suggesting that it would take years to actually conduct this investigation. I just think that— Mr. Parker, I have one question before I lose the opportunity. Yes. Does the defendant need a court order in order to get these jury records? No. There's nothing in the statute that would suggest that. There's nothing— Does the jury records office in this jurisdiction deny access without a court order? I don't know if, as a practical matter, that has occurred. It certainly is not in the jury plan. It's not in the statute. It's not consistent with the court's decision in test, and it certainly is not in the record. I also think that we can, at the very least, presume that the jury commissioner and the district court, for that matter, would resolve these issues in a regular manner that is consistent with the statute. And if a defendant presents himself or the defendant's representative presents himself or herself at the jury office and the jury commissioner knows that this individual is a litigant in the case, the records that they are asking for are within the scope of what they are entitled to and it's within normal business hours, the jury commissioner would have no discretion to refuse to provide those records. But we don't know what the actual practice is. I mean, I do know— Make a presumption. But we don't really know what the practice is. I think that's right. I do know that there have been cases where defendants, for example, have gone to the jury office and asked for the records and they've been denied, not this jury office necessarily, but jury offices in other courts. Alden in the Eighth Circuit, which is cited in our brief, is an example of that. There are reasons that that might occur, but— Let me ask you, is this a fair and very brief summary of your understanding of the statute then? That if the defendant makes the—moves for—pardon me, if the defendant sees on the day of the jury selection what appears to be an imbalance or some disproportion in the pool, and so seeks a continuance from the court, the court should grant that if it is sufficiently manifest, sufficiently likely that there might be something wrong, but has the discretion to say no doesn't look—it's not obvious to me that there's a problem. You can—we're going to go forward with the trial. You can go to the jury records office in the meantime. I think that that is—that would be an appropriate result under the statute, yes. If there are no further questions. Well, there are two other issues, so you would stand on your brief on those? Sure. I would be happy to answer any questions. Tell us one link between that AK-47 and the defendant. Just one. Well, I actually think there are a number of links. Who's your best? Well, I think the fact that the compound where it was found was the compound where the defendant lived, was running his massive heroin trafficking operation, which at one point was responsible for 20 percent of the world's supply of heroin. Well, wait a minute. He lived there, but he didn't live there alone, right? That's correct, but we— Problem? Well, we do know, though, that there are a number of circumstances that suggest that he was not only fully in control of the compound. I mean, it was his compound and he was the drug kingpin of this organization. We also know that he employed people there. The son-in-law—his story is his son-in-law was farming the land, right? That is not the only evidence of individuals working there, but I would note there is one point I'd just like to make about that particular one. The thing that is not noted in the reply brief is that what was being farmed on that land was opium poppies for many years. So he might have good reason to carry a gun when he's out there in the field, right? Well, he could, and I think that would be very much connected with his drug trafficking operation. But you didn't argue a co-conspirator theory. We actually did argue the co-conspirator theory. We argued— Your brief here? We argued it in our brief here, and we also argued it— You said you just hadn't preserved it. We argued it in our sentencing memorandum below. The district court did not address that because it found that there was sufficient evidence here for constructive possession. So what do you suggest we do with that? If the current basis for the district court's decision on the AK-47 is insufficient, what should be done? Well, I think that there would be other grounds on which the court can affirm. What do we do? I think it's well established that the court can affirm on any ground that's presented in the record here. I think there are— Make our own decision about that? I'm sorry? Make our own decision about the link between the gun and the—through the co-conspirator? Well, I think that the case law would clearly support the ability of the court to affirm on any ground that's been presented to it, even if it's not the precise ground. Any ground preserved in the record, which would require the necessary factual findings. Correct. Yes, and we preserve this. This is at Page's— Wait a minute. That's on any legal ground. This is a factual question, isn't it? There's no finding. Well, I think that— Under the co-conspirator theory. I think that's right, though I would note that there is undisputed evidence that I think would support it. For example, an AK-47 was also found in the compound of Farman Shah, who was the defendant's chemist and the keeper of his ledgers. We know that there were other individuals who worked at the compound. It was not just the young man who assisted Fareed during the drug transaction that occurred. Baggio was also caught on tape, taped telephone conversations, stating that he had a man whose job it was to basically go to the heroin lab and bring heroin back to the compound so it could be sold. There were his sons who were—or sons-in-law who were apparently engaged for some time in the cultivation of opium poppies, although Baggio then later contended that they were growing wheat. I just think that the— What's your strongest case for the proposition that in a drug factory compound, the normal principles of constructive possession do not apply? Well, I think that they—I want to be clear. We don't think that the concept of constructive possession changes. It's just the type and quantity of proof necessary to prove it changes based on whether it's a sentencing context or a trial context. Well, some DEA agent sees a gun come out of the compound. That's enough? I think that when you link it up with all of the other evidence that the district court had before it, and this includes— What you have is what I said—the premise of my question is that if you apply the normal, the regular principles underlying constructive possession, it's not shown here. And you push back by saying it is shown here because it's a compound manufacturing illegal drugs and drugs and guns go together. Well, again, I think—I just want to be clear at the outset. We're not saying that the normal requirements for constructive possession aren't met. It's simply that in this Court's cases discussing constructive possession, those have been cases involving an element of the offense proved beyond a reasonable doubt. Not all of them. And we just don't think that that type of proof is needed here. You mentioned in your brief, you identified a couple of the cases that the defendant had cited which were, in fact, merits conviction cases. Correct. But not all of them. I'm sorry. I didn't hear that last. There were cases that she cited, I believe, that turned on the preponderance standard. There were two cases from the Ninth Circuit. That's correct. Now, I think both of those cases are distinguishable. One involved the question of whether the—when the defendant was found in a—or a gun was found in the defendant's apartment, but none of his other cohabitants appeared to be connected with the drug trafficking crime. Here, that fact wasn't true. The other one involved a case where— Wait a minute. Who is—have you connected the son-in-law to the drug trafficking? Well, I don't think that this turns on the sons-in-law. I would note that— He's the only other one that actually lives there, right? No. The sons-in-law were apparently involved in farming, but they were growing opium poppies, which are the precursor to heroin. There was a—the young man who was there who, when Fareed arrived to conduct the drug transaction, he was on the phone. The young man was on the phone with Haji Bagchow taking orders from him in providing the heroin to Fareed. Haji Bagchow was recorded telling Fareed that he had a man who would go and pick up the heroin at a drug lab and then bring it back to the compound. Not the sole owner of this property, correct? The district court found that he was, based on the evidence in the record. The district court pointed to the paragraph 91 of the pre-sentencing memorandum, which is quite explicit that it was—he was—he with his family owned this property together. Bagchow had said that, but I believe that the district court was also— Evidence was that he was the sole owner. I think if you look at pages 298—297 to 298 of this supplemental appendix, the district court there is saying that it had concluded that Bagchow owned this compound. I know that in the— I don't know which appendix you're— I'm sorry. What are you starting from? Tell me, is this the sentencing hearing, or what is— Yes, this is the sentencing hearing. You've got too many appendices in this case. This is the sentencing decision, or the re-sentencing decision? Yes, this is the re-sentencing hearing. And on pages 297 to 298, the court says, given the defendant's own statements about his property, the court finds that the enhancement is appropriate. Right. All he says is the defendant's own statements about his property. What statements? Well, I think— That's a conclusion. That's not a fact. What evidence in the record is supportive that he was sole? She points to paragraph 91, which says he's the co-owner along with his extended family, and, by the way, that there's a guest house on this property. Well, that's true, but I think that you also have to remember the fact that Bagchow had— Bagchow's residence was here. It was by far the largest house on the compound. Bagchow used it extensively for purposes of running his heroin trafficking operation. His family members who were there by his own admission worked for him. Do we know where this gun came from in the compound? I'm sorry. Do we know where this gun came from? Did it come out of the guest house or out of his house? No. No. Candidly, we don't have evidence precisely where this gun was found. All we are saying is that the Court's review here, which is only to ask whether it was clearly erroneous for the Court to conclude that it was more likely than not that Bagchow had some control over this gun and that it was not clearly improbable that it was connected to his drug trafficking offense, which is the standard under the guidelines, that that is met by the evidence in this case. That is obviously a very different standard than would be applied in other cases involving elements of the offense. And that's the standard under what? Did you say? I didn't hear what you said. Under the sentencing guidelines. Fine. That would be the standard to be applied. All right. Anything further? No. We would ask that the Court affirm. Thank you. All right. Counsel for Appellant. Give you a couple of minutes. Thank you. There's absolutely no evidence that all of the occupants of the compound were co-conspirators, and the evidence regarding his son-in-law was a statement made in 2009 that my son-in-law by the name of Muhammad Gul and Naga Gul look after my house located in Marko. They've grown wheat there now. In the past, my farmers have grown opium there. What are you reading? I'm sorry. I'm reading paragraph 91 of the final PSR. In the past, they've grown opium there at the time when poppy cultivation was a trend in this area, but there's no evidence about when they grew poppy, when they stopped growing poppy, when they started growing wheat. It's also undisputed that Haji Baggio has two wives and 16 children and I think maybe eight siblings who co-own the property. Does anything in the records show how many people were living there at the time of the search? No. The agent didn't testify about who was present at the time of the search except to say that Haji Baggio was not present. At the two subsequent searches, there were many people present, men and women and children, and there was testimony about that. The government's arguments about co-conspirator liability had to do with the gun found at Farm and Shaw's house. The district court made no factual findings about that. We don't know why she didn't make a ruling on that. The government argues that she didn't make a ruling in light of her ruling about the AK-47 at Baggio's compound, but she didn't say that. She simply didn't make a ruling. Perhaps it was because she found the evidence insufficient, perhaps for some other reason, but there are no factual findings. Did the government make an argument at sentencing about co-conspirator responsibility or co-conspirator count for enhancement, sorry, for this AK-47? No. That's my understanding of the record. There was no argument about that, and there certainly were plenty of In any event, this court cannot affirm on any ground if that ground is one where the district court has not made factual findings. We ask the court to remand the case to allow the defendant to inspect the jury records for resentencing without the two-point enhancement. Thank you. We'll take the case under advisement. Case placed. This honorable court now stands adjourned until Wednesday at 9.30 a.m. Thank you. Thank you.
judges: Rogers, Millett, Ginsburg